Good morning, your honors. May I please the court? My name is Svetlana Kav, and I'm appearing on behalf of Mr. Kmet, who is the petitioner in this case. This case has to do with an asylum applicant from Ukraine who applied for asylum based on persecution on account of political opinion, specifically exposing illegal government corruption in Ukraine of illegal transportation of arms across the border. The immigration judge and subsequently the BIA found Mr. Kmet to be credible. They also found that he did suffer past persecution. The issue before this court is now whether there's a nexus between past persecution and a protected ground here, political opinion. And there are a number of legal issues under the nexus here. I believe that this case is very similar, in fact, identical to the facts of previous Ukrainian case decided by this court in 2007, Fedunyak v. Gonzalez. And in that case, similar to Mr. Kmet, it was a private individual who sold and repaired cars, who resisted and then reported money extortion, which is a government corruption to high-level officials. And because of that, he was retaliated against. And this court found that this person is eligible for asylum for reporting government corruption under the protected ground of political opinion. This court has already decided in previous cases, such as Grava and Sagaidak, and affirmed in Fedunyak as well, that the government, exposure of government corruption can be considered political opinion and has been considered political opinion. Now, the weak point in your case is the issue raised by the IJ and the BIA, and that is how do we know that this is not just an action by a private person who is breaking the law and is then taking his revenge against Mr. Kmet? How do we know that we have state involvement? Yes, Your Honor. First of all, we know that we're looking at the motive, at the mixed motive doctrine under the Real ID Act, where we have to have at least one central reason for the persecution of the person, for the exposure of the corruption, not just exposure of the criminal act, but in fact somebody's political opinion of doing that. And in this case, petitioner Mr. Kmet has already shown that he is against government corruption when a few years back. Yeah, but I'm not sure you're fully appreciating my question. I think he's given us a lot of testimony. He's exposing corruption. Yes, Your Honor. But my question is, who is doing these bad things to him or is threatening these bad things to him? Because if it's purely the private person, he doesn't show persecution under the statute. We have to show involvement of the state. Yes, Your Honor. So tell me what the involvement of the state is. Yes, Your Honor. This person, Mr. Mikhail Ivanovich, whom he met through his work and who is the one who was involved in this illegal armed transportation, was working for a high government official, Mr. Bout, B-O-U-T. My client was found credible, so this fact should come true that Mr. Ivanovich was working for a high level Navy official. But he's in the Russian Navy, correct? Yes, Your Honor. Not the Ukrainian. Yes, Your Honor. And he's seeking asylum from Ukraine. Yes, Your Honor. Yeah. Even if I do claim that Mr. Ivanovich was involved with the government, because if you look under GRAVA, for example, this court decided that it doesn't have to be specifically the government that is persecuting the person. It has to be the – or, I'm sorry, it doesn't have to be the government official necessarily who is committing this corruption. It has to be the party that is inextricably intertwined with the government operation. And if you look at the actions of transporting illegal arms, the government is involved 100 percent. The Ukrainian government would be involved in the transportation of illegal arms. Well, except the evidence in the particular case presented by your client is that the two people he knew at the border – The border patrol people, Your Honor. Ruslan and Vasily, they stopped the transportation of this truck. And that's what started causing the problem. That ends up with Vasily being hanged and Ruslan being charged with criminal – some sort of criminal charge. Yes, Your Honor. But they were retaliated against to the same as my client tried to stop this and was retaliated against. Go ahead. I didn't mean to interrupt. Okay, now we may be getting somewhere. Who's retaliating against them? Do we know if it's the government retaliating against them? Is it, again, this Mikhail guy who's retaliating against them? That might make a difference. Your Honor, we know that this Mikhail Ivanovich guy is directly linked to the government because as soon as Mr. Kmet reported to the police, first of all, he was beaten up and tortured right when he came to make the report. Then he received threatening phone calls. Then once he reported to the Ukrainian National Security Service, he was retaliated against also. He was beaten by two individuals. One of them he recognized to be the guard of Mr. Ivanovich. Mr. Ivanovich mysteriously found out that he was released from custody. He was severely beaten. His teeth were knocked out and his car was burned. Then even after he left, his family continued to receive threats. Well, however, if we go back to the situation with the police, which was my question, what evidence do I have in this record that the police were involved with Ivanovich? I mean, the police never used his name. They never asked your client to change his report. I admit that your client was questioned and beat, but it seems to me that one could easily suggest that was merely to get him to confess to the crimes rather than having anything to do with Ivanovich. And he was then released. And then there's nothing that says that this was to clear Ivanovich. And so, therefore, given my standard of review, again, I'm having a tough time understanding why I can say there's not substantial evidence to sustain what the BIA did. Yes, Your Honor. In fact, in the record it does show that Mr. Ivanovich's name was used when, as soon as Mr. Kmet was released from custody, he received that phone call the next day or two. He received the phone call threatening him to stop playing into the police. And that Mr. Ivanovich knows it is in the record, Your Honor. Well, I understand that it says that he got a phone call after being released from the police saying don't go to the police anymore. But, again, that just says Ivanovich and his cronies want to persecute your client  and, therefore, they want him to keep away from the police. I mean, they have an operation going and him going to the police is not their way to go. But personal amnesty is not political opinion. Your Honor, even if I do believe that Mr. Ivanovich was directly involved with the government, but stepping away from that, even if we do say that Mr. Ivanovich was not acting together with the government, I still believe that in this case, this case is very similar to the other cases that have to do with religious persecution and with national origin persecution, where this Court and the Supreme Court has found that the persecution doesn't have to be directly by the government. It can be by the bodies which the government is not willing or unable to control. So, clearly, because Mr. Kmet suffered so much persecution, even if it's not from the government, but it's from these bodies, the government clearly was not able to help him out. He was attacked so many times. He was beaten. His family was threatened. His car was burned. He clearly faces, and the Court did find that all these threats, immigration judge did find that all the accumulated harm that Mr. Kmet suffered did rise to the level of persecution. So if it did rise to the level of persecution, then the harm was severe. And the harm was so severe, even if it's not by the government entities, it's clearly by the bodies that the government was not willing or unable to control. So I think this case is very similar to the cases where skinheads persecute people from caucuses and the government is not willing to control them, and they're just simply criminal parties, or they're nationalistic organizations. So how is this different from the religious cases, from the anti-Semitic cases by the skinheads? This is a similar situation where this Mr. Ivanovich is so powerful and is able to get the arms through the borders, the government is clearly not able to control him because he's continuing to eliminate people and to harm people that are trying to stop it. Okay. Your time has run. Let's hear from the government, but we will give you a minute to respond. Yes, Your Honor. Thank you. Good morning, Your Honor. May it please the Court, my name is Bernard Joseph, and I represent the Respondent, the Attorney General of the United States. In this case, the petitioner, who is a citizen of the Ukraine, seeks review of the agency's denial of his application for asylum withholding of removal and for protection under the CAT. The Court should uphold the agency's decision and deny the petition for review because the petitioner is a citizen of the Ukraine. Okay. I mean, that's your boilerplate. Let me go cut to the chase here. It seems to me that there are actually several indications of government involvement here that were mentioned not by the IJ and not by the BIA and not by your adversary this morning. Let me just start down the list. Just after Vitaly and Ruslan stopped the truck at the border, two, quote, investigators come to talk to Vitaly. Now, the government, and I don't think you were the government lawyer in front of the IJ. No, Your Honor. Yeah. The government objects to the characterization because the question goes to Mr. Komet, well, tell me more about these investigators. The government says investigators is not in the record that they're investigators. In fact, it was already in the record from the testimony of Mr. Komet, and he later says, so we have two investigators coming, which sounds like those are officials. Two days later, Mr. Vitaly is hanged by somebody else. It is not really seriously contested that he was killed rather than committed suicide. That's not much, but we also know that Ruslan was arrested and confined on false charges arising out of this stopping at the border. Well, the only entity that's going to arrest and put somebody on false charges is going to be the state. So we have state involvement there. The mother's letter, it's an odd letter, but I'm supposed to treat things as credible. The mother says that the militia is coming and asking about you, not just Mr. Ivanovich. They will also have the anonymous phone call one day after he leaves the police station, and he says, well, obviously, Mr. Ivanovich is in contact with the police, and they tell him. The IJ's response is, well, obviously, the Ivanovich people were following him, and they must have seen him leave the police station, or maybe they saw him be arrested at the police station. There's no evidence for that. I mean, that's just the speculation by the IJ. And then finally, the testimony from Mr. Kemet as to what happened at the police station and what should happen, he says what should happen in the police station is when you come in with a charge against somebody who's committed wrongdoing, they're supposed to open a file on the case. He says they didn't open a file on the case. Instead, what they did was after I told them what had happened and gave them my report, they left me alone for several hours. Then they come back, and they beat me because I refused to say that I was involved. That suggests to Mr. Kemet that they'd gone off and they'd talked to Ivanovich or one of his henchmen and were now acting based upon the fact that, hey, wait a minute, this guy's not going to turn me in. We want this guy to be intimidated so that we know that he confesses that he was involved. All of those things suggest to me that the government was involved, and the IJ doesn't talk about them. What are your responses to those things? Your Honor, first, I don't think the evidence suggests that the government was involved. Okay, but I made five points. Could you respond to those five? In terms of an official report, when Mr. Kemet went to the police station, as he said, the officer charged with interviewing him listened to his story and didn't interrupt him. Subsequently, the officer did ask him to put the story in writing. After his first draft, the officer did not ask Mr. Kemet to change any portion of it that implicated Mr. Ivanovich. Instead, he just asked Mr. Kemet to clarify his role in what Mr. Kemet was reporting as an illegal act. Well, clarify his role is kind of a sanitary way to say it. He disappears for several hours, and then he comes back and says, you were involved, and you better tell me how you were involved. And then when he doesn't do it, he beats him. Clarifying is one way of saying it, but that doesn't really capture it very well. Well, I agree that the tactics involved by the Ukrainian police were heavy-handed. The burden is on the petitioner to show that there wasn't a legitimate investigative purpose there. After he refused to make a confession, the police allowed him to leave without asking him to withdraw his report. He wasn't told to drop the accusations about Mr. Kemet in his story. He wasn't punished after that. Well, wait a minute. What do you mean he wasn't punished? They beat him when he wouldn't do it. Yes, Your Honor. But he was released, and he was told that he would be contacted subsequent to this if there was any further need for investigation. Right, and he wasn't contacted. Well, he was contacted prior to leaving. However, his mother was contacted by the police after he had departed. Yeah, and the mother's letter says, I was contacted, and I viewed that as a threat rather than a continued investigation. The militia comes, and Mikhail Ivanovich's people come looking for you. Ivanovich's people have come looking for him in the past, but I think the record reflects that Mr. Ivanovich, rather than having a connection to the government, in fact was more concerned that Mr. Kemet would report any of these activities to the government. During their conversations, he specifically told them that he didn't want him to go to the government. After Mr. Kemet was released. What do you do with the fact that Mr. Ruslan, or Ruslan, that's his first name, was criminally charged on false charges after he and Vitaly stopped that truck at the border? That's obviously what the government is going to do with the charges. Correct, Your Honor. And the testimony does reflect that Mr. Ruslan's mother told Mr. Kemet that he was detained on what she said were false charges. Right. However, I mean, we know that's what Mr. Ruslan's mother told Mr. Kemet. There's no evidence in the record that the charges were actually false. No, that's evidence. You can say it's weak, but it's evidence. It's evidence that we have to take. His testimony is true, correct? I mean, the biggest part of what my colleague's question is to you, which gives me some idea that the government may have been involved, is what happened to his friends. I mean, one was hanged and one was put into prison on false charges. That has to be something to do with the government, I guess. I mean, my worry is that that's substantial evidence going either way from what you want it to go. Well, the government would contend that that doesn't compel a reversal in this situation. The evidence, again, there is testimony from Mr. Kemet that Vitali was hanged and that Mr. Kemet feels that he was he didn't hang himself, that he didn't commit suicide, that he was hanged by somebody else. There's testimony in the record from Mr. Kemet that Mr. Ruslan's mother told him that Mr. Ruslan had been detained on trumped-up charges after an investigation. I don't know if there's anything in the record, though, that would compel reversing the agency's decision on this matter. I guess I want to change to another. The second question really has to do with the CAT claim. I didn't find anything in the record where the BIA ever adopted the IJ's findings about this issue. Do you? Well, the board specifically recognized that Mr. Kemet was appealing the board's or the immigration judge's. Yeah, they say he's appealing, but they don't say anything about the CAT claim at all. The board specifically recognized that the immigration judge rejected Mr. Kemet's CAT claim. So? That is it. Well, you don't want us to handle that. Well, I mean, my worry is that everything you've said doesn't get to me where I need to go. In fact, the BIA didn't even provide a conclusion for which we can review the IJ decision. I think in this case the court can review both the board and the immigration judge's decision. How can I get there? Give me the best case. Because if the BIA doesn't even reach a conclusion, it doesn't seem to me that I can review the IJ decision. The board affirmed the immigration judge's decision, and part of the immigration judge's decision was that. That's your best argument? They don't have to talk about it? They don't have to say anything about it? The government would contend that looking at both opinions as a whole and the record as a whole, there's substantial evidence to uphold the agency's decision. Well, that's if we get the substantial evidence. But I'm looking at now a decision on which I can really concentrate on whether I am going to affirm or not, and I didn't find one. You don't want a remand, do you? Well, the government would contend that remand is unnecessary, Your Honor. However, if the court feels that the board's decision is not sufficient for this court to reach a decision on a CAC claim, then remand would be proper. But the rule is if we don't have a decision by the board on a question that's been raised, we're not supposed to make the decision for the BIA. That's correct, Your Honor. Well, you don't want a remand. Isn't that because you think you win on this issue? Well, the government would contend that substantial evidence supports the agency's finding on the CAC claim. There is no evidence in the record that would show that there was any past treatment that would rise to the level of torture. And the government would contend that there is no evidence that would show that the government would acquiesce in any future harm that may occur to Mr. Komet if he's removed to the U.S. But really, BIA gets the first shot, don't they? Correct, Your Honor. Okay. In conclusion, we respectfully request that this Court uphold the agency's decision and deny the petition for review. Okay. Thank you. Ms. Koff, you've used your time, but if you'd like a minute for rebuttal. Your Honor, I just want to go back to the issue of whether the government was involved in this case and also briefly talk about CAT. So the government involvement, we have evidence in the record that clearly shows that at least in three instances the government showed involvement. First was the investigators who talked to the border patrol officers, and one of them was hung, another one was arrested on false charges. The second one, the mother was persecuted clearly, threatened by the militia and not by Mr. Ivanovich's private people's guards. And the third one is when Mr. Komet came to make a report, if he was somehow guilty of also participating in this illegal scam, he would have been pressed charges against. Instead, after a few hours, he was retaliated against. So this clearly shows that the government was involved in this case. Therefore, there should be a nexus between the exposure of the government corruption, making it political opinion, and the persecution. Therefore, since persecution was already proven, it was already proven that Mr. Komet was credible and that he was persecuted, and evidence clearly establishes that it was based on political opinion. I want to talk about CAT just for ten seconds. BIA did err in not reviewing the CAT relief, and the immigration judge erred in concluding that because they couldn't prove nexus at the IGA level between persecution and a protected ground, Mr. Komet is not eligible for CAT. But for CAT, you don't have to prove that it was based on a protected ground. It's not the same law as for asylum. All you have to show is a high probability of future torture. That's a question, though. I understand that you don't need to show the nexus as to the past behavior, and I apologize for taking you over time. But in order to sustain a CAT claim, is it sufficient that a purely private actor will torture you, or does it have to be a state actor who tortures you, or a private actor that the state is unwilling or unable to control who tortures you? Your Honor, I believe it has to be either the government or the parties whom the government is not able or unwilling to control. So that takes us back, in a sense, to the problem we've already had. He has to show to sustain a CAT claim that it's not just Mr. Ivanovich who's going to get him, but it's going to be Mr. Ivanovich acting with the authority or essence of the state or the state itself. Now, I understand what we're going to have to do is send it back in any event, but okay. Thank you, Your Honors. Ms. Kaplan, I do have a question. And just so we're clear, the victor, the victor bout in this case, is that the victor bout? That's what immigration judge found to be credible evidence that it is, Your Honor. Does the fact that bout is detained and being prosecuted in the Southern District of New York change anything in this case? Well, it's not being prosecuted by the Ukrainian authorities. The government in Ukraine didn't do anything to him or in Russia. Would that be relevant to the CAT analysis? Well, he's being taken care of in the United States, Your Honor. Nothing is being done against his actions in his own country. So I don't think it's relevant here because my client is fearing persecution in his own country. He's pretty safe in the United States because the laws are different here. Thank you. Thank you. Okay. Thank you very much. The case of Mett v. Holder is now submitted for decision.
judges: Mills, Fletcher W. , Smith N. R.